THE NATIONAL IRON ARMOR COMPANY *vs.* BRUNER and BAXTER.

1. A party dealing with an agent for a special purpose, must ascertain, at his own peril, the agent's power. And where an agent's contract to sell land, at a fixed price, has been approved by the principal, the purchaser has no right to infer from that fact, that the agent has power to alter the terms of the contract.

2. An agent with restricted power to sell a tract of land at a given price, has no power to bind his principal by any representation as to the

quantity or quality of the land. Such representations, if false, may avoid the contract.

3. Upon a bill for specific performance of a written agreement for the conveyance of land, parol evidence is incompetent to lay the ground for compensation for a deficiency.

The defendants, on July 1st, 1863, leased a large wharf, called "the Baxter lot," situate at Kaighn's Point, adjoining the works of the complainant, to the complainant, for two years, at $900 per annum, payable quarterly, with an agreement that the complainant might purchase the wharf for $18,000, at any time during the term of said lease. A short memorandum to this effect was signed by William H. Forepaugh, the agent of the defendants.

The complainant entered into possession, built a large shiphouse on the leased premises, and made other improvements, at an expense of upwards of $21,000.

After the termination of the two years, the complainant never having paid any rent, nor having given (as alleged) any notice of an election to purchase, nor offered to pay the price, the defendant, James P. Bruner, trustee of Mrs. Elizabeth Baxter, brought an action of ejectment in the Supreme Court to recover back the possession of the premises.

The bill was filed by the complainant for specific performance, and to enjoin the defendant, Bruner, from further prosecuting his action of ejectment.

The lot in question, on March 11th, 1863, was conveyed by Thomas E. Baxter and wife to the defendant, James P. Bruner, a brother of Mrs. Baxter, in trust, for her separate use, with power of sale, &c., by description identical with that under which Baxter had purchased of one John M. Kaighn in 1853, the river front being described as thirty-eight feet six inches greater in extent, than it in reality was. A proportionate deduction of the price was claimed by the complainant.

The hearing of the cause was brought on upon the pleadings and proofs.

*Mr. P. L. Voorhees* and *Mr. Robeson*, Attorney General, for complainants.

*Mr. Carpenter* and *Mr. Browning*, for defendants.

This company, after holding the wharf in question the whole of two years, paying no rent, and not offering to pay the purchase money, now set up the error in the length of the river front, as an excuse for their delinquency, and claim a proportionate deduction from the price.

The contract of sale was made of a wharf lot as a whole, adjoining the complainants' premises, the extent of which was visible to the eye. Mr. Forepaugh was a mere special agent, authorized only to offer the premises for sale as they stood.

The evidence shows that the company had discovered the error before entry, and most certainly before any expenditure of money. If he promised to make any deduction from the price—of which there is no evidence—he had no authority to make such promise, and his principals are not bound. But it would not be competent to prove even the parol declarations of the principals in such case as this before the court.

But the defendant, Bruner, is entitled to proceed in his action of ejectment. The complainant never gave any notice of an election to purchase, unless the erection of the large ship-house on the premises may be so considered.

THE CHANCELLOR.

The complainants ask for the specific performance of a contract for the conveyance of lands, with compensation for a deficiency of a part alleged to be in the contract, to which the defendants have no title. The contract was made by Bruner, the trustee of Mrs. Baxter, the other defendant, with her consent, and was in writing, signed by W. S. Forepaugh, the agent of Bruner. The agreement was a lease of certain premises to the complainants for two years, with the right to purchase, for the price of $18,000, at the election of the complainants, to be made during, or at the expiration of

the term. The tract was described in this lease as that situate at Kaighn's Point, adjoining the complainants' works, known as the Baxter lot; and no further description was given of it. It was a lot which Thomas E. Baxter, the husband of the defendant, Mrs. Baxter, had conveyed to Bruner in trust for her, and was well designated by that name. The complainants allege that Forepaugh represented to them, when making the agreement, that the tract was over two hundred and thirty feet in extent along the Delaware river, and exhibited the deed, or a copy of the deed, to Bruner, in which it is described as two hundred and thirty-one feet six inches along the river, when, in reality, it is only one hundred and ninety-three feet in extent along the river; and that afterwards, when the matter was brought to Forepaugh's attention, he agreed that they should have an abatement, in proportion to the deficiency. They allege that they gave notice to Forepaugh, within the two years, of their election to purchase the property, as provided in the lease.

The defendants admit that Forepaugh was employed to receive offers for the sale or letting of this property, and that he submitted the offer of the complainants to them, and that they authorized his making the lease and contract signed by him; but deny that Forepaugh had any power to rent or sell, except upon terms first submitted to, and approved by them.

The bill charges, and the answer admits, that in the deed to Bruner the tract was described as extending along the Delaware river, two hundred and thirty-one feet six inches, and that it is, in reality, only one hundred and ninety-three feet; that a lease was drawn up by direction of the complainants and Forepaugh, in which the description of the property was copied from the deed; that this lease was signed by the complainants and defendants, but was never delivered, the delivery being stopped on account of this error in the description of the tract. The defendants deny any knowledge of notice of the election of the complainants to purchase being given to Forepaugh, or to themselves, within the two

years, and that the complainants have at any time offered to comply with the contract, on their part, by taking the deed, and paying and securing the money.

The complainants have erected on the premises extensive buildings, at the cost of several thousand dollars, a great part of which was done since the alleged error as to the river front was discovered by them.

Forepaugh died about two months after the lease was signed by him; that is dated June 29th, 1863. The only proof of the authority given to him by Bruner, is in the evidence of Bruner, which corresponds with his answer. By this, Forepaugh had no power to sell or lease, or vary the terms of a sale or lease, except upon first reporting the proposition to him, and obtaining his assent; the lease which was signed, was signed in that manner. There is no proof in the case, that the defendants, in any way, held out Forepaugh as their general agent, or did, or permitted any act which could deceive or mislead the complainants as to his power.

Making a contract as agent, at a fixed price, and the approval of such contract by the defendants, does not hold him out to the world as an agent to sell at any other price, or to vary the terms of sale. It is every day's practice for an owner of real estate, to authorize an agent to sell it at a certain price, a given part in cash and the rest on credit. The agent cannot bind the principal to a sale on any other terms. The purchaser must ascertain, at his own peril, the power of the agent. And if the agent's contract on these terms is approved, and adopted by the principal, the purchaser has no right to infer from that fact, that the agent has power to alter the terms of the contract.

An agent with restricted power to sell a tract of land at a given price, has no power to bind his principal by any representation as to the quantity or quality of the land. That is beyond his power; or else by representing that a tract of five acres, which he was authorized to sell for $1000, contained ten, he could bind his principal to convey it for $500

on the principle of compensation. False representations made by an agent at the bargain, although unauthorized by his principal, may release the purchaser from his contract, on the ground of fraud or deception, which is upon another principle of equity; but they cannot bind the principal, if beyond the scope of the authority given.

But if the principal himself, had made the representations as to the extent of the front, alleged in this case, and they had been by parol outside of the contract, the contract being in writing, they would not authorize the court to decree specific performance with compensation for the deficiency. It is a settled principle of equity, that where a written contract of sale, or written particulars delivered with it as part of it, describe the land as of certain dimensions or contents, and they in any way fall short, the purchaser will have the right to call for a conveyance of the part which the vendor can convey, with a proper deduction as compensation for the deficiency. *Fry on Spec. Perf.*, § 299 *and* 791; *Hill* v. *Buckley*, 17 *Ves.* 395; *King* v. *Wilson*, 7 *Beav.* 124; *Waters* v. *Travis*, 9 *Johns. R.* 465; *Couse* v. *Boyles*, 3 *Green's C. R.* 212.

But the same effect is not given to parol representations made at the contract, or before it. And this distinction is very properly made upon correct principle. The statute of frauds would be of little avail in such cases, if alleged parol representations should be incorporated by this court into the written contract, and performance compelled of this reformed contract. Parol evidence of such representations is received in equity, but for the purpose of showing such actual fraud, or such misleading of the defendant by the mistake of the complainant, as would make it inequitable to decree specific performance, when that is sought by the party making the misrepresentations. But parol evidence is never received to lay the ground for compensation for deficiency. This is the uniform and established doctrine in equity. *Winch* v. *Winchester*, 1 *Ves. & B.* 375; *Rich* v. *Jackson*, 4 *Bro. C. C.* 518; *The Marquis Townshend* v. *Stangroom*, 6 *Ves.* 328; *Miller* v. *Chetwood*, 1 *Green's C. R.* 207.

On either of these two grounds, compensation for any deficiency by deduction from the price must be refused. It will be, therefore, unnecessary to consider the weight or sufficiency of the evidence as to the alleged representations or promises of Forepaugh.

There might be a serious question, whether the notice to Forepaugh of the election to purchase, would, under other circumstances, be sufficient. But the expensive buildings and improvements openly and notoriously erected on the premises by the complainants, gives them a claim to the favorable consideration of the court; and as the counsel for the defendants, upon the argument, seemed to concede the right of the complainants to a conveyance upon paying the arrears of rent, and the purchase money with interest, let there be a decree for a conveyance to the complainants on these terms, within a reasonable time to be fixed in the decree. The costs of the suit must be paid by the complainants.