This is a bill by the vendor to rescind a contract for the conveyance of real property on the ground of fraud.
On May 14th, 1923, the parties entered into a written agreement for the purchase and sale of land and building. The property consisted of a sixteen-family apartment-house. Shortly before, and either on the 7th or 8th of that month, the premises in question had been offered to the complainants, and had been inspected by one Wagner, who had an interest in the contract, in company with one of the employes of the real estate agent through whom the contract was negotiated on behalf of the defendants. Wagner swears that he was taken by the agent's representative into two living apartments on the premises, one comprising six rooms and the *Page 260 
other four. In the larger apartment he found that it was fitted with electric light fixtures and a bath, among other improvements, and that the four-room apartment had no electric light fixtures, but did have either a bath or an appropriate place for the installation of one. He says that he was told by the agent's representative, Grizzelle, that each of the three other six-room apartments was precisely similar in the matter of improvements as the one shown, and that each of the remaining eleven four-room apartments was similar in all respects to the four-room apartment shown. The truth of the matter is that no other apartment in the building was equipped with electric fixtures, and no other four-room apartment was fitted with a bathtub or any place for the installation of one. Wagner also swears that he requested permission to inspect a number of the apartments, but was dissuaded therefrom by Grizzelle, who told him that the house was inhabited by Armenians, unfamiliar with our language, and that it would be impracticable to make them understand so that they would permit admission to their respective homes. Grizzelle admits all of this testimony, except that portion dealing with the misrepresentation of similarity of all apartments with like number of rooms, and denies interfering with the inspection of other apartments except the two testified to by Wagner. In fact, Grizzelle says that, while leaving the apartment-house, Wagner walked into another four-room apartment and made an examination of it, while he, Grizzelle, remained in the hall. The testimony of Abraham Tobin as to his inspection of the premises on a subsequent date is, to all intents and purposes, identical with that of Wagner, and he testified that the defendant Mrs. Supino, or her husband, or both of them, had admitted later on that they had been defrauded in the same manner, and that the deposit of a thousand dollars would be returned and the contract canceled.
I am convinced that the complainants are entitled to a decree. I agree with counsel for the defendants that there has been an astounding quantity of perjury committed in this case, and I am satisfied that it has been committed upon *Page 261 
both sides, but on the part of the complainants it has been upon collateral details and not on the main features. Without going into any extended discussion of these less material matters, I am going to base my decision of fact upon the circumstances that Grizzelle admits every allegation of the complainants as to his conversations with them about the fitting up of various apartments, except the one single matter of the misrepresentation as to the appointments of the apartments that the complainants did not see. Secondly, upon the undoubted fact, admitted by Grizzelle himself, that upon the meeting to pass title, when asked as to what he had sold, and before he was put upon his guard, he again let slip the statement that the four-room apartments all had places for baths. This is damning in the extreme. It may be within the realm of possibility that this man could have, conveniently for the complainants, made this mistake for the first time on the day of passing title, but it is so improbable that no serious and impartial person can possibly believe it. To do so would upset the logic of decision of facts as it had existed in courts ever since records have been kept. This, taken in connection with the perfect dovetailing of the charges made by the complainants and the testimony of the defendants except as to the differences I have mentioned, leads me to the opinion I have indicated. It may be true that the complainants are what has been described in this case as "real estate sharpshooters," but that does not deprive them of their rights in a court of justice or alter the fact that if a fraudulent misrepresentation of fact was made to them, and they, having the right to do so, relied upon it, the defendants, themselves, have given them the opportunity they seek to withdraw from it. The suspicion such an occupation arouses has been kept in mind, but it does not alter my determination of the very damaging testimony of the defendants' witness, Grizzelle. There is no question in this case of the negligence of the complainants. In the absence of any representation on the part of the sellers, it might have been the duty of the purchasers to make their own investigations. But where the seller, who may reasonably be presumed to *Page 262 
know the particulars of his own property, undertakes to give information thereabout, the purchaser is entitled to rely implicitly on the statement of the seller who in any way dissuades him from an examination. Atwood v. Small, 6 Cl. F.232. Ordinarily, a purchaser is charged with what an examination of the premises will reveal. But not in this case. To apply the rule under those circumstances would be to convert it into an instrument for the accomplishment of the grossest frauds.
The defendants say that, even though it be established that Grizzelle made the false representations as to the fittings of the various apartments, still the complainants cannot recover, because a principal is not bound by the fraud of his agent. In support of this position a great number of cases are presented, such as Cooley v. Perrine, 41 N.J. Law 322; Young v. Hughes,32 N.J. Eq. 372; National Iron Armor Co. v. Bruner, 19 N.J. Eq. 331.
These cases are not in point — in fact, some of them are authority rather against than in favor of the defendants' argument. The rule is expressed by Professor Pomeroy in his Eq.Jur. § 909:
"If the principal receives and retains the proceeds of the agent's fraud * * * the property, money and the like, obtained through an executed transaction * * * or claims the benefit of or attempts to enforce an executory obligation thus procured, he renders himself liable for the fraudulent acts of his agent."
Vice-Chancellor Pitney cites this passage in Turner v.Kuehnle, 71 N.J. Eq. 466. That was a case where a woman refused to execute a conveyance with her husband, and he, acting in collusion with an attorney, had the latter purchase at the foreclosure sale under a mortgage subject to which he took title. The wife had been fraudulently told by the attorney that her interest in the property would not be affected by the sale. At page 479 the vice-chancellor said:
"A purchaser situate as is the defendant here cannot take advantage of the doctrine of `innocent purchaser without notice,' when he is claiming the very fruit of the fraud which his agent has practiced without his knowledge or authority. *Page 263 
I acted on that principle in Johnston v. Reilly, 68 N.J. Eq. 130.
(Italics mine.)
Any other rule would, of course, be most inequitable.
My attention has been called to what I have recently said inStrauss v. Rabe, 127 Atl. Rep. 188. What I was dealing with there was the authority of a special agent to bind his principal outside the scope of his authority, and had nothing to do with the very different rule of one who seeks to reap the benefits of his agent's fraud and exonerate himself in the same breath. InCondon v. Sandhowe, 127 Atl. Rep. 101, I refused to set aside a conveyance because of fraudulent misrepresentations made by one party to the other where the other did not purchase in reliance thereon, but instituted an independent investigation and was bound by what he learned, or could have learned, by the exercise of ordinary diligence. In that case I said:
"Had there been any effort to frustrate the attempt of the defendants in their examination of the building, a different situation would have been presented. The completest opportunity was afforded them in this respect.
In the case at bar, on the other hand, as has already been shown, Grizzelle flagrantly and cunningly prevented the complainants from making the examination they sought to undertake. When it was attempted to look through other apartments than the two shown by him, he told the prospective purchasers that the other apartments were occupied by ignorant foreigners who did not understand our language, and their fears and suspicions would render it impracticable to ever complete the examination of the entire building, and reiterated his assurance as to the similarity of all apartments comprising the same number of rooms throughout the structure. It would be strange, indeed, if these complainants could be held to the terms of a contract thus entered upon.
I will advise a decree in accordance with the prayer of the bill, terms to be settled upon notice. *Page 264