This is a bill to foreclose a mortgage on real property, but the important issue grows out of a charge of fraud in the answer and counter-claim.
On May 14th, 1923, the defendants executed a purchase-money mortgage in the sum of $1,600, and delivered the same to the complainants, the mortgagees. On November 14th, 1923, the first installment of interest fell due and was not paid, but within the thirty days of grace provided in the mortgage the defendants caused a writ of attachment to issue out of the circuit court of Bergen county against the lands and tenements, c., of the complainants. On January 16th, 1924, an auditor was appointed in the attachment proceedings, *Page 205 
and subsequently thereto the said installment of interest was paid to that officer. This was after the said period of grace had expired.
The defendants in their counter-claim charge that the complainants fraudulently represented to them that the dwelling upon the land conveyed, and upon which the mortgage was a lien, was constructed of hollow tile, when, in fact it was not so constructed, and that by such corrupt practice upon which thedefendants relied they were induced to enter into the contract for the purchase of the said premises, and prayed, among other things, a rescission of the contract under an amendment allowed at the final hearing.
The proofs disclose the sharpest conceivable conflict and even documentary evidence is fiercely questioned, the complainants denying any such misrepresentation as contained in the counter-claim. Were the completest analysis of the evidence attempted, no decision could be reached that would be at all satisfactory, nor would it be possible to come to any conclusion other than that perjury of the worst kind had been committed, upon either the one hand or the other. For the reason that I will immediately take up, a decision can be effected that stands upon a more satisfactory foundation, and which, I think, must be controlling, no matter what may have been the truth as to the alleged misrepresentation before the contract of sale was executed.
During the negotiations the defendants, and especially Mrs. Sandhowe, made repeated calls to the premises, and on one of them they were both accompanied by two men named Fitzpatrick, when an elaborate examination of the premises was made. The defendants and the Fitzpatricks say that the latter were taken to the house for the purpose of having one of them act as a chauffeur, and to have the other or both of them pass their untechnical opinions as to the desirability of the property for use as a suburban residence. The complainants, on the other hand, swear that these men were introduced to them as builders who were familiar with the construction of such properties. There can be no question that it was in the latter capacity they were introduced. The *Page 206 
elder of them might well have passed for a mechanic engaged in construction on a limited scale. They are clearly of an entirely different class, socially, than the defendants, and no plausible explanation was given that would account for the relation existing between them and the defendants to lend color to their explanation. It seems clear to me that the defendants did not rely upon the representations made by the complainants, as they would have had a right to do, but, on the other hand, undertook an examination of the property for the purpose of determining the truthfulness of the statement as to the construction being of hollow tile. One of the Fitzpatricks, while in the cellar, asked where the hollow tile began, and, according to his testimony, was told by Condon that it commenced above the foundation. One of the Fitzpatricks, upon discovering a crack in the stucco, with which the exterior of the building was covered, says that he undertook to test the wall with a stone, whereupon Condon said to him: "It is hollow tile all right." Even assuming, for the purpose of this consideration of the case, all the defendants say to be true, it seems to me to disclose beyond peradventure, as I have already said, that the defendants did not rely upon what they had been told by the complainants, and must be presumed to have carried out their own investigation and to have found the conditions as they existed.
I think there can be no question that the defendants would have been entitled to rely upon any such statement as that with which they charge the complainants. The trouble is, however, as I have said, that they did not do so, but preferred to investigate the matter for themselves, and, having done so, must be charged with what it is reasonble to assume they found, or could have found, if their investigation was made with the care and completeness to be expected of one who deals at arm's length with another. This rule will be found discussed in Pom. Eq. Jur. § 893. In a foot-note (at p. 1852), in the fourth edition of that work, the author points out as a ground of the latter branch of the rule the practical impossibility of learning just how much information a party *Page 207 
has obtained by such inquiry, and the opportunity otherwise of repudiating any transaction fairly entered into with which he has become dissatisfied. The same rule is laid down in 12 R.C.L.
(at p. 357). In Attwood v. Small, 6 Clark F. 232, representations said to be false were made by the vendor. Notwithstanding such assurances, the purchaser during the negotiations instituted an inquiry as to the truth or falsity of such statements. The investigation, as it turned out, was very superficial, and did not discover all the proofs, although there was abundant opportunity for that purpose, as there was in the case at bar. Nevertheless, it was decided by the house of lords that the vendee had cut off any claim to being misled by his own act, and that if he undertakes to judge for himself, and is not successful thereat, he should not be allowed to set up his own carelessness. In Lysney v. Selby, 2 Ld. Raym. 1118. it was said:
"If the vendor gives in his particular of the rents, and the vendee says he will trust him and inquire no further, but rely on his particular, then, if the particular be false, an action will lie; but if the vendee will go and inquire further what the rents are, then it seems unreasonable he should have any action, though the particular be false, because he did not rely on the particular."
The rule is further illustrated by innumerable cases, such asJennings v. Broughton, 5 DeG. M. G. 126; SouthernDevelopment Co. v. Silva, 125 U.S. 247; Farrar v. Churchhill,135 U.S. 609; Tuck v. Downing, 76 Ill. 71; Long v. Warren,68 N.Y. 426; David v. Park, 103 Mass. 501.
The rule is, of course, a logical and just outgrowth of the doctrine of notice, and, as Vice-Chancellor Van Fleet said, inDe Witt v. Van Sickle, 29 N.J. Eq. 209:
"A person who willfully closes his eyes to avoid seeing what he believes he would see if he kept them open, must be considered to have seen what any man with his eyes open would have seen."
Had there been any effort to frustrate the attempt of the defendants in their examinations of the building, a different *Page 208 
situation would have been presented. The completest opportunity was afforded them in this respect.
Furthermore, the defendants say that they had full knowledge of the fraud practiced at their expense as early as June, 1923, and, in fact, as early as that month charged the complainants therewith. Notwithstanding, and although the complainants emphatically denied any fraud, nothing further was done, except the writing of a single letter, until December of that year, when the writ of attachment above mentioned was sued out. Explanations have been attempted of this delay, but they fail to excuse it. One who believes that he has been wronged in the manner charged in the counter-claim does not remain quiescent over a period of six months, but, on the other hand, immediately upon the charge being denied proceeds to litigate.
I will advise a decree in accordance with the prayer of the bill and dismissing the counter-claim.