MILTON J. SAWYER AND ANOTHER v.
ALFRED W. TILDAHL AND OTHERS.
CHESTER L. GLISAN, d.b.a. GLISAN REALTY, AND
ANOTHER, APPELLANTS.

148 N. W. (2d) 131.

January 6, 1967—No. 39,943.

458

*W. R. Poseley,* for appellants.

*Van Valkenburg, Moss, McEachron & Flaherty,* for respondents.

Murphy, Justice.

This is an appeal from an order of the district court denying a motion

for judgment notwithstanding the verdict or for a new trial. The only issue of substance is whether the verdict for the plaintiffs is supported by the evidence. The action grows out of the purchase of a home by plaintiffs, Milton J. Sawyer and Georgia L. Sawyer, his wife, from defendants, Alfred W. Tildahl and Marian Tildahl, his wife. In addition to the Tildahls, the complaint named their broker, Chester L. Glisan, and American Surety Company of New York, surety on his real estate broker bond, as defendants. The action was to recover damages for misrepresentations made by defendants Glisan and Tildahl. Plaintiffs were awarded compensatory damages in the amount of $3,000 and in addition $100 punitive damages.

Viewing the record in the light most favorable to the verdict, it appears that the owner-sellers listed their property with defendant broker. Plaintiffs, who were prospective purchasers, contacted the broker who showed the property to them. It had come to the attention of plaintiffs that some of the homes in the area had a water problem in the basements. They discussed this matter with the broker on more than one occasion. In the course of these discussions and inquiries, plaintiffs were told by Glisan, "[Y]ou will never have a water problem with this basement." Glisan went on to say, "[Y]ou couldn't possibly have a water problem in this home because you are south of Highway 10 and your land is very close to Rice Creek and this land all drains to Rice Creek."

The record would indicate that plaintiffs relied on the representations of the broker, completed a contract for purchase, and finally bought the house about April 17, 1962. On taking possession they discovered that the floor of the basement was covered with from 1 to 1½ inches of water. Various explanations were offered as to where the water came from. The flooding was attributed to unseasonable rains, the possibility that the house penetrated the water table, the appearance of an "underground spring," and a possible faulty pipe connection with the city water main. In any event the record established that before the sellers moved they had made an attempt to correct the seepage problem by plugging certain cracks and installing a sump pump to siphon off the water. The siphoning was continued by plaintiffs after they took possession and until the problem either corrected itself or disappeared. The record also in-

dicates that about 2 years prior to the sale a neighbor observed a pump siphoning water from the excavation that is now the basement. It also appeared that a babysitter who was present in the home some months before the sale, while the property was occupied by the Tildahls, observed water on the basement floor and that the walls of the basement were damp.

The purchase price of the house, including certain equipment, was $17,000. There was testimony from a qualified real estate appraiser that the existence of the water problem reduced the value of the property by $3,000 to $3,400. At the time this witness inspected the property, which was several months after the purchase, he observed water on the floor of the basement.

■ Since the appeal here is by the broker and his surety, it may be said that the authorities generally support the proposition that an agent who fraudulently makes representations or knowingly assists in the commission of fraud or duress by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal. If the broker engaged to sell induces a third person to purchase by means of fraudulent representations, he is liable to that person for loss suffered as a consequence. 12 Am. Jur. (2d) Brokers, § 108; Restatement, Agency (2d) § 348.

■ Appellants contend that the evidence does not support a finding that there was a misrepresentation of a past or existing material fact or a finding that the representations by the agent were relied upon by the purchasers. We must be controlled by the law as it is expressed in Hafner v. Ritzinger, 256 Minn. 196, 97 N. W. (2d) 839, which also involved alleged fraudulent representations with respect to water seepage in the basement of a house. In that case we pointed out that the correct rule respecting the right to recover for fraudulent representation in the sale of property was stated in 8 Dunnell, Dig. (3 ed.) § 3818:

"A person is liable for fraud if he makes a false representation of a past or existing material fact susceptible of knowledge, knowing it to be false, or as of his own knowledge without knowing whether it is true or false, with intention to induce the person to whom it is made to act in reliance upon it, or under such circumstances that such person is justified

in acting in reliance upon it, and such person is thereby deceived and induced to act in reliance upon it, to his pecuniary damage."

It should be conceded that a water problem in the basement of a home is of "material" consideration to a prospective buyer and in this case was of such importance that plaintiffs would not have considered purchasing the home if they had not been assured by the broker that they would have no seepage problem. While it may be true that the broker did not actually know that there had been water seepage in the home, that fact was nevertheless susceptible of knowledge. It would seem that that information should be available to an experienced real estate broker who "knew his merchandise."

■ We find nothing in the record which supports appellants' assertion that there was an absence of reliance by the purchasers upon the broker's representations. While the record establishes that the Sawyers did inspect the basement, that inspection did not disclose the presence of the condition complained of. The testimony of plaintiffs was: "We determined from the basis of what Mr. Glisan told us that we would make the Tildahls an offer" and that "if he [Glisan] had indicated he had any knowledge [of a water problem in the basement], I would have been not interested in buying the home." It was pointed out in Meland v. Youngberg, 124 Minn. 446, 454, 145 N. W. 167, 170, that "[t]his court * * * in consonance with the weight of authority has held that, if the buyer, instead of investigating as fully as he might, made only a partial investigation, and relied in part upon such investigation and in part upon the representations of the adverse party, and was deceived by such representations to his injury, he may maintain an action [for fraudulent representation]." The record would indicate that the purchasers would expect the broker to have knowledge of water-seepage problems in that particular area and could be expected to rely upon the truth of statements made by him.

■ In addition to awarding compensatory damages, the jury awarded plaintiffs the sum of $100 as punitive damages. On a motion for a new trial this award was vacated as against defendant American Surety Company; thereafter, plaintiffs waived their right to such damages altogether. As we gather from the brief of the appellants, error occurred here as a

462

result of the court's instructions on the subject of damages. After correctly instructing the jury on the issue of damages, the court said that they might, "but you are not required to, impose punitive or punishment damages. Those damages may be awarded only for willful or malicious or outrageous conduct, that is for acts which the evidence shows were done with a bad motive or with a reckless indifference to the plaintiffs' interests. But if punitive damages be allowed they as well as general damages must be fair, just and reasonable." It does not appear from the record that any exception was taken to this instruction. We agree with appellants that there is doubtful support in the record to justify an instruction that the jury could find the conduct of the broker to be such as to warrant punitive damages. This asserted error was first raised on the motion for judgment notwithstanding the verdict or a new trial. While appellants in their brief cite authorities to the effect that the instruction was not warranted on the evidence, we do not find any argument or authority presented which would convince us that the instruction was so prejudicial as to require a new trial. The verdict for compensatory damages was well within the limits permitted by the evidence.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.