**John LOCK, Sr. and Ella G. Lock, his wife, Plaintiffs,**

v.

**George B. SCHREPPLER, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Nov. 23, 1980.

Decided Jan. 28, 1981.

Garry G. Greenstein, Knecht, Greenstein, Schagrin & Berkowitz, Wilmington, for plaintiffs.

Edward F. von Wettberg, III, and Clark W. Furlow, Morris, James, Hitchens & Williams, Wilmington, for defendant.

STIFTEL, President Judge.

This case is presently before me on defendant George B. Schreppler's motion for summary judgment.

The events leading to the present suit involve the plaintiffs' purchase of the house and property on Walker School Road north of Smyrna, Delaware. Plaintiffs allege that the defendant, the listing realtor in this transaction, defrauded plaintiffs by failing to reveal to plaintiffs, the buyers, his knowledge of the extensive termite damage to the beams which supported the floors in the house. Defendant denies fraudulent activity on his part in the sale of this property.

Defendant Schreppler first became involved in the sale of the property on Walker School Road when he was called to the house by the then-owners, Mr. and Mrs. Sander. After negotiation, the defendant agreed to represent the Sanders as listing realtor in their sale of the property. After reaching this agreement, defendant and the Sanders toured the house so that defendant could record the relevant characteristics of the house for use in the listing process. It was at this time that defendant was first informed that the house had been infested with termites, requiring Mr. Sander to have a termite treatment applied to the premises. Mr. Sander also informed defendant that in his estimation, the infestation had caused some damage to the house, including the weakening of certain parts of the structure, specifically the floor support beams. Mr. Sander then pointed out to defendant the visible slope in the living room floor as evidence of Sander's conclusion.

Defendant, as listing agent, then prepared a listing describing the property, which he placed in the New Castle County Board of Realtors' multi-list service. Plaintiffs first learned of the availability of the Walker School Road property through a copy of this listing, which was sent to them by their real estate agent, a Mrs. Josephine Wojcik. There was no information in this listing which would reveal that this residence had

ever been infested with termites, or that that infestation had caused any damage to the structure, and defendant did not convey these facts to Mrs. Wojcik when she called for information.

Mrs. Wojcik arranged for the plaintiffs to see the house on August 19, 1978. Sometime during this initial tour, Mr. Lock noticed the slope in the living room floor. No information as to the cause of this slope was offered by the Sanders, apparently because Mr. Lock did not ask them about this problem.

Plaintiffs arranged for a second visit to the house on Saturday, August 26, 1978. Plaintiffs were accompanied on this visit by Mr. Lock's brother, George Taylor, a handyman, as well as Mrs. Lock's mother and Mrs. Wojcik. Due to unforeseen circumstances, plaintiffs were unable to gain access to the interior of the house and had to restrict their inspection of the house to the exterior and the crawl space. Mr. Lock and Mr. George Taylor attempted to inspect the lower structure of the house using the crawl space below the house, but due to the constructed dimensions and generally filthy condition of the crawl space, Mr. Lock and Mr. Taylor were unable or unwilling to go further than three feet into the space. During this limited inspection, Mr. Lock and Mr. Taylor observed what appeared to be a cracked beam, which they thought might be the cause of the sloping living room floor.

The plaintiffs and Mr. Taylor made a third trip to the house on Monday, August 28, 1978, in order to make the interior examination they were unable to make on the previous Saturday. Mr. Lock and Mr. Taylor went from room to room, discussing their ability to undertake certain renovations, and attempting to reach a rough estimate of the cost of this remodeling. During the course of the inspection, Mr. Taylor bounced up and down on the sloping area in the living room floor, as well as peering into the area above the drop ceiling in one room, ostensibly to determine the possibility of constructing a ceiling storage area. Mr. Taylor commented on the slope in this drop ceiling by stating that "it probably needs some support." After his inspection, Mr. Taylor ventured no opinion as to the soundness of the structure, merely stating that it looked like a nice house, that it was up to his brother-in-law, and that he would assist in any minor renovations Mr. Lock might want to make.

Although the record is somewhat confused on this point, it was at some point during the plaintiffs' second or third visit to the property, and Mrs. Wojcik's office, that plaintiffs learned that the house was being sold in "as-is" condition, and that the house had been treated for termites. Some inquiry was made as to a termite "certificate" by plaintiffs on the third visit. When plaintiffs returned to Mrs. Wojcik's office, defendant Schreppler appeared and informed plaintiffs and Mr. Taylor that there was a termite certificate, that the house had been treated for termites, and a one year guarantee against reinfestation went with the house. After further conversation, plaintiffs signed a contract for purchase of the house.

Plaintiffs made no further inspections of the house before settlement.

At settlement, plaintiffs' attorney reviewed all relevant documents, including the termite certificate. The attorney brought to plaintiffs' attention that the language of the termite certificate implied that the premises treated had been infested with termites and although it said nothing about damage, there was a good possibility that some damage to the structure of the house had resulted from the infestation. Plaintiffs indicated they understood, and went through with the settlement.

Plaintiffs then took possession of the house on Walker School Road. It was several weeks after they moved in that plaintiffs, while replacing a window frame, discovered that the house had extensive termite damage. A thorough inspection of the home by an exterminator revealed that the termites had weakened the floor and ceiling supports extensively, rendering the house unfit for habitation. The extent of the damage was evidenced by the discovery

that the beam supporting the rear bedroom floor was in turn being supported by an automobile jack.

Understandably, plaintiffs were unhappy with the discovery of the termite damage. Plaintiffs filed the present suit, naming George Schreppler, Rose L. Rose, Josephine Wojcik and their attorney at settlement as defendants. After extensive discovery, plaintiffs dismissed the actions against all defendants save Mr. Schreppler.

In its present form, plaintiffs' complaint against defendant sets forth three bases for recovery: (1) That defendant's actions taken in furtherance of the consummation of the sale to plaintiffs constituted common law fraud; (2) that defendant's actions in furtherance of the consummation of the sale to plaintiffs violated the provisions of 24 *Del.C.* § 2912(a); and (3) that defendant's actions taken in furtherance of the consummation of the sale to plaintiffs violated the provisions of 6 *Del.C.* § 2513 and § 2532. However, a stipulation of the parties agrees that the disposition of plaintiffs' cause of action for violation of 6 *Del.C.* §§ 2513 and 2532 will be governed by this Court's disposition of plaintiff's cause of action for common law fraud. This stipulation effectively limits the purview of the Court on this motion to the questions of whether the facts of this case set forth a claim for fraud, and whether plaintiffs may base a claim against defendant Schreppler on the provisions of 24 *Del.C.* § 2912. In the interest of clarity, I will deal with these issues separately.

I

Before discussing the issue of whether the facts of the present case allege a claim for fraud against defendant, I find it necessary to delineate the scope of my inquiry.

Although the defendant has focused the major part of his argument on the issue of fraudulent concealment, I note that the pleadings allege fraud as the basis of the plaintiffs' claim for relief. Since fraud encompasses both fraudulent concealment and fraudulent misrepresentation, 37 *Am. Jur.2d*, "Fraud and Deceit", § 2, this Court must review the facts in order to determine whether the facts support an action for *either* fraudulent concealment or fraudulent misrepresentation. Given the minor differences between the two actions,* I see no indication of prejudice to either party by proceeding in this manner.

Of course, even if the pleadings did not raise a claim for fraudulent misrepresentation, I may consider such an issue in order to reach a fair and just determination of the issues. Civil Rule 56 of the Superior Court is identical to Federal Civil Rule 56. The federal courts have often noted that on summary judgment the court is not limited to the issues raised by the pleadings; instead, the court must consider whether the evidence as a whole raises substantial, genuine issues of fact to be tried. *Thompson v. United States*, 10th Cir., 312 F.2d 516 (1962), cert. denied, 373 U.S. 912, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963); *Eastland v. Tennessee Valley Authority*, 5th Cir., 553 F.2d 364 (1977), cert. denied, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977). Given the liberal application of Rule 15 of both the Federal Rules of Civil Procedure and the Superior Court Civil Rules, which fully permit supplemental amended pleadings as discovery and facts develop, it is inappropriate to foreclose a claim for relief unless no development of facts would allow recovery. *Ramsey v. Georgia-Pacific Corporation*, 5th Cir., 597 F.2d 890 (1979).

---

* As noted in 37 *Am.Jur.2d*, "Fraud and Deceit", § 2, there is no clear line of demarcation between fraudulent concealment and fraudulent misrepresentation, although "concealment" usually suggests a suppression or non-disclosure of a fact that should be revealed, whereas "misrepresentation" most commonly implies a positive and false statement made in reference to the subject matter of a transaction. However, a look at the *Second Restatement of Torts*

indicates that the confusion still exists. Chapter 22 of Division 4, which outlines the basic requirements of a cause of action for fraudulent misrepresentation, actually includes fraudulent concealment and non-disclosure of material information which the person has a duty to reveal, as a species of fraudulent misrepresentation. See *Restatement, Second*, "Torts", §§ 526, 529, 550, 551.

## II

Moving to the facts of the present action, and viewing the evidence and the inferences drawn from it in the light most favorable to the non-moving party, as is required on a motion for summary judgment, *Howard v. Food Fair Stores, New Castle, Inc.*, Del. Supr., 7 Storey 471, 201 A.2d 638 (1964); *Sweetman v. Strescon Industries, Inc.*, Del. Super., 389 A.2d 1319 (1978), the question is whether the defendant has demonstrated by uncontested facts that there is no dispute as to any material fact nor the inferences to be drawn therefrom. *Vanaman v. Milford Memorial Hospital, Inc.*, Del.Supr., 272 A.2d 718 (1970). Given the interpretation of the facts most in favor of the plaintiffs, I find that defendant has failed to show, as a matter of law, that he was free of fraud in inducing plaintiffs to purchase the home involved.

Defendant relies primarily upon Chancellor Marvel's opinion in *Hendrick v. Lynn*, 37 Del.Ch. 402, 144 A.2d 147 (1958), to support his argument that this Court should grant summary judgment in defendant's favor on plaintiffs' claim for fraud. In *Hendrick*, plaintiffs Hendrick purchased a house from defendant Lynn, then discovered the house was infested with termites. Plaintiffs brought suit in the Court of Chancery, seeking to have the contract of sale rescinded. One of the charges set forth in the pleadings was that the defendant fraudulently concealed the condition of the house by failing to reveal the termite infestation to plaintiffs. Plaintiffs argued that defendant as seller had a duty to reveal to them any material defect in the premises. Chancellor Marvel rejected plaintiffs' argument, and held that a claim for fraudulent concealment could not be founded solely upon a vendor's failure to reveal defects in the residence to a buyer in an arm's length transaction where the buyer had the opportunity to inspect the property before sale.

Analogizing the present case to the facts of *Hendrick v. Lynn, supra,* the defendant contends that plaintiffs' claim for fraud is similarly based upon a mere allegation of non-disclosure on defendant's part, and un-

der the holding of *Hendrick*, fails to state a fraud claim. I disagree.

Looking to the pleadings and the record, it appears that plaintiffs' claim for fraud is based not on a mere claim that Mr. Schreppler as a reputable agent should have made a full disclosure of all defects within the house; rather, plaintiffs contend that upon two separate occasions, defendant Schreppler acted in such a manner as to impose upon himself a duty to reveal to the plaintiffs the full facts of the termite infestation as known to him. Specifically, plaintiffs contend that: (1) Mr. Schreppler, by listing said house in the Delaware Realtor's Multi-List Book, had a duty to list all material facts as to the condition of the house, particularly termite infestations; and (2) Mr. Schreppler, when informing the Locks of the termite treatment at their meeting prior to the signing of the sales agreement, took upon himself the duty to make a full and fair disclosure. Therefore, plaintiffs have alleged more than defendant's mere failure to disclose the termite infestation. I must now analyze the facts surrounding these two incidents to determine whether defendant has shown that there is no factual dispute, and defendant is entitled to judgment as a matter of law.

For plaintiffs to recover damages for fraudulent concealment, plaintiffs must demonstrate that defendant took some action affirmative in nature designed or intended to prevent, and which does prevent, the discovery of facts giving rise to the fraud claim, some artifice to prevent knowledge of the facts or some representation intended to exclude suspicion and prevent inquiry. *Nardo v. Guido DeAscanis & Sons, Inc.*, Del.Super., 254 A.2d 254 (1969). Section 550 of the *Restatement of Torts, Second,* sets forth a similar standard:

"§ 550. Liability for Fraudulent Concealment

One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the

nonexistence of the matter that the other was thus prevented from discovering."

As stated in the official comment to § 550, the rule set forth by the section is most commonly applied in two situations. The first involves the active concealment of a defect; the second involves the situation where the defendant seeks to dissuade the plaintiff from investigating the item for sale. Comment b to § 550 states:

"b. The second situation occurs when the defendant successfully prevents the plaintiff from making an investigation that he would otherwise have made, and which, if made, would have disclosed the facts; or when the defendant frustrates an investigation. Sending one in search of information in a direction where it cannot be obtained is a typical illustration of frustration. Even a false denial of knowledge or information by one party to a transaction, who is in possession of the facts, may subject him to liability as fully as if he had expressly misstated the facts, if its effect upon the plaintiff is to lead him to believe that the facts do not exist or cannot be discovered."

In contrast, fraudulent misrepresentation requires the plaintiffs to demonstrate that: (1) The defendant made a substantial, material misrepresentation respecting the transaction; (2) the representation must be false; (3) the defendant must have known the representation was false when he made it; (4) the defendant made the representation with the intention of inducing the plaintiffs to act upon it; and (5) the plaintiffs did act in reliance on the statement and were harmed as a result. *Nye Odorless Incinerator Corporation v. Felton*, Del.Super., 5 W.W.Harr. 236, 162 A. 504 (1931); *In re Brandywine Volkswagen, Ltd.*, Del.Super., 306 A.2d 24 (1973), aff'd 312 A.2d 632 (1973).

Comparing fraudulent concealment and fraudulent misrepresentation, the only apparent difference is the emphasis of the former on misdirection of the deceived party, as opposed to the latter concept, which seems to require a false statement of fact

to be represented as true. Both require an intentional deception of the plaintiff by the defendant, which the plaintiff relies upon to his detriment.

Turning to the present case, it is difficult to see how plaintiffs could base an action for fraud solely upon the defendant's representation as contained in the Realtor's Multi-List Book. Even assuming for the purposes of this motion that it was a common practice of realtors to set forth a termite infestation in a listing, that defendant was aware of this practice and intentionally disregarded this practice, knowing that the Multi-List Book would be shown to prospective buyers, plaintiffs must still demonstrate their reliance upon this statement. Having inspected the house, and discussed the matter with both Mrs. Wojcik and Mr. Schreppler, plaintiffs cannot now claim that they relied to any extent upon the Multi-List Book's description of this house as a "good" house.

However, to state that the Multi-List Book listing could not be a basis for the plaintiffs' claim for fraud does not dispose of plaintiffs' claim. Mr. Schreppler's conversation in reference to the termite problem with the plaintiffs prior to their signing of the purchase contract created an issue as to whether the content of Mr. Schreppler's statement was such as to mislead the plaintiffs into believing there was no significant termite problem with the house. Mr. Schreppler contends that he informed the Locks that there had been a termite infestation and subsequent damage; and that the house had been treated for termites. This statement is substantiated in part by Mrs. Wojcik. The account related by the Locks and George Taylor, on the other hand, seems to indicate that no mention was made about any damage. Even assuming that Mr. Schreppler did mention that there had been some damage, defendant does not contend that he informed the Locks of the damaged support beams. Given the conflicting accounts, there is some evidence that even if some mention was made of damage, the import of the conversation was such as to convey to the plain-

tiffs the impression that any damage due to the termite infestation was minor. A representation may be fraudulent even if it is true, if the defendant knows that because of facts not stated, the statement is materially misleading. *Restatement, Second,* "Torts", § 529; *Remeikis v. Boss & Phelps, Inc.,* D.C.App., 419 A.2d 986 (1980). Although there is no general duty to speak, nevertheless, if a person undertakes to speak, he then has a duty to make a full and fair disclosure as to the matters about which he assumes to speak. *Franchey v. Hannes,* 152 Conn. 372, 207 A.2d 268 (1965). Once Mr. Schreppler undertook to inform plaintiffs of the termite problem, he had a duty to fully inform the plaintiffs so as not to mislead them with inadequate information. *Smith v. Pope,* 103 N.H. 555, 176 A.2d 321 (1961). That the defendant in this case is the listing real estate broker, and not the vendor, does not affect this duty. If a broker engaged to sell induces a third person to purchase by means of fraud, he may be liable to that person for loss suffered as a consequence. 12 *Am.Jur.2d,* "Brokers", § 108; *Restatement, Second,* "Agency", § 348; *Sawyer v. Tildahl,* 275 Minn. 457, 148 N.W.2d 131 (1967); *Shane v. Hoffmann,* 227 Pa.Super., 176, 324 A.2d 532 (1974).

Defendant argues that even if it is assumed that he made a misleading statement, plaintiffs could not have relied upon that statement because they made their own independent investigation of the premises in question. Having made that investigation, defendant contends that plaintiffs cannot now be held to have relied upon defendant's statements. However, defendant's argument overlooks the general application of the rule he espouses. Although parties are chargeable with what may be reasonably found if they make an investigation, *Condon v. Sandhowe,* 97 N.J.Eq. 204, 127 A. 101 (1925); *Goldman v. Hart,* 134 Ga.App. 422, 214 S.E.2d 670 (1975); where an ordinary investigation would not reveal a latent defect, plaintiffs could properly rely upon the defendant's misrepresentation. *Maser v. Lind,* 181 Neb. 365, 148 N.W.2d 831 (1967). Similarly, if only a partial investigation is made, under proper

circumstances, a party may rely on another's representations to his detriment, particularly where the other person has superior knowledge. *Sult v. Bolenbach,* 84 Ariz. 351, 327 P.2d 1023 (1958). Looking to the record of the present case, I cannot say, as a matter of law, that plaintiffs could not have relied upon defendant's alleged misleading statements as to the damage to the house resulting from the termite infestation.

The depositions of the Locks and Mr. Taylor indicate that, although Mr. Taylor's opinion was solicited by the Locks, the primary intent behind the solicitation was to receive Mr. Taylor's opinion of the house as a residence for Mr. Taylor's mother, Mr. Lock's mother-in-law, as opposed to seeking Mr. Taylor's advice as a "contractor". Given Mr. Lock's knowledge that his brother-in-law was a "jack of all trades—but a master of none," and Mr. Taylor's rather equivocal statements about the house, I cannot agree with defendant's contention that the only conclusion to be reached from the record is that the plaintiffs relied solely upon Mr. Taylor's expertise in concluding that the structure of the house was sound.

Similarly, the evidence does not compel a conclusion that the Locks relied solely upon their inspection of the property in concluding the structure of the house was sound. Mr. Lock stated that he knew termites ate wood, but neither Mr. Lock nor Mr. Taylor indicated that they knew how to detect termite infestation or damage in an existing structure without tearing out each section of wood. Although both were aware of the sloping floor in the living room, the limited inspection of the floor supports made by Mr. Lock and Mr. Taylor apparently was not sufficient to specifically determine the cause of the slope. Even assuming a declaration as to the termite infestation had been made by Mrs. Wojcik prior to Mr. Schreppler's statement at the contract signing, there is nothing to indicate that any connection between the infestation and the floor supports was suggested.

In this light, I conclude that there remains a question of fact as to whether

plaintiffs reasonably relied upon defendant's statements in reference to the termite infestation. Although there is a strong indication that plaintiffs, in their decision to buy this house, relied in part upon their own inspection and Mr. Taylor's opinion, this does not completely bar plaintiffs' action for fraud. Plaintiffs are not required to show they relied *solely* upon Mr. Schreppler's statements as to the condition of the house. Plaintiffs are required to demonstrate they reasonably or justifiably relied upon defendant's statements. *Nye Odorless Incinerator Corporation v. Felton, supra; Shane v. Hoffmann, supra; Restatement, Second*, "Torts", § 537(b). Justifiable reliance requires that the representation relied upon involve a matter which a reasonable person would consider important in determining his choice of action in the transaction in question, *Restatement, Second*, "Torts", § 538; however, it is not required that a reasonable person would make a choice solely upon the basis of that matter. The defendant's misrepresentations need not be the sole cause of the plaintiffs' damage, merely a substantial factor in inducing the plaintiffs to act. *Perkins v. Ketchum*, 211 Cal.App.2d 245, 27 Cal.Rptr. 278 (1962); *Sult v. Bolenbach, supra*. Defendant has failed to demonstrate that plaintiffs could not have justifiably relied upon his statement.

This decision is in accordance with recent decisions in this area. In *Maser v. Lind, supra*, the plaintiffs purchased a house after making an ordinary inspection of the premises. The Court held that where the plaintiff was unfamiliar with termites and their activity, and the damage was not apparent to his eye, plaintiff could reasonably rely on the defendant's representation. Similarly, in *Remeikis v. Boss & Phelps, Inc., supra*, plaintiff was aware of the infestation and knew that one beam had been mended as a result of the termite damage. Nonetheless, the Court held that there was not sufficient evidence to determine, as a matter of law, that plaintiff was on notice of the extensive termite damage.

In summary, defendant has failed to show that his statements informing plaintiffs of the termite infestation did not misrepresent or conceal the extent of the termite problem, and to demonstrate that plaintiffs could not have justifiably relied on these statements. I conclude that defendant has not succeeded in preventing the common law action of fraud by plaintiffs.

### III

I now turn to the issue of whether plaintiffs may utilize 24 *Del.C.* § 2912(a) as a statutory cause of action. After consideration of the arguments of both parties and the authorities cited for both sides, I conclude that 24 *Del.C.* § 2912(a) does not set forth a statutory private remedy which plaintiffs may utilize.

Title 24 of the *Delaware Code*, Section 2912(a) states as follows:

"§ 2912. Revocation of certificate; reprimand of licensee; causes.

(a) The [Delaware Real Estate] Commission may, upon its own motion, and shall upon the verified complaint in writing of any person, provided such complaint, together with evidence documentary or otherwise presented in connection therewith, shall make out a prima facie case, investigate the actions of any real estate broker or real estate salesman or any person who shall assume to act in either of such capacities within this State, and may suspend or revoke any certificate issued under the provisions of this chapter or reprimand any licensee at any time where the certificate holder has by false or fraudulent representation obtained a certificate, or where the certificate holder, in performing or attempting to perform any of the acts mentioned herein, is guilty of:

(1) Making any substantial misrepresentation; or

(2) Making any false promise of a character likely to influence, persuade or induce; or

(3) Pursuing a continued and flagrant course of misrepresentation or the making of false promises through

agents or salesmen or advertising or otherwise; or

(4) Acting for more than 1 party in a transaction without the knowledge of all parties for whom he acts; or

(5) Failing, within a reasonable time, to account for or to remit any moneys coming into his possession which belong to others; or

(6) Being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interest of the public; or

(7) Paying a commission or valuable consideration to any person for acts or services performed in violation of this chapter; or

(8) A violation of any of the rules and regulations of the Commission; or

(9) Any other conduct, whether of the same or a different character from that specified in this section, which constitutes improper, fraudulent or dishonest dealing."

■ Generally, the mere absence of a specific statutory cause of action does not bar completely any cause of action based upon that statute. A statutory cause of action may be inferred from a statute if it can be shown that such a result was intended by the Legislature in enacting that statute. See *Young v. Joyce*, Del.Super., 351 A.2d 857 (1975). The most comprehensive test used to determine whether a private remedy is implied in a statute was set forth by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted', *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

See, e. g., *National Railroad Passenger Corp. v. National Assn. of Railroad Passengers*, 414 U.S. 453, 458, 460, 94 S.Ct. 690, 694, 38 L.Ed.2d 646 (1974) (Amtrak). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, e. g., *Amtrak*, supra; *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 423, 95 S.Ct. 1733, 1740, 44 L.Ed.2d 263 (1975); *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). And finally, is the cause of action one relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler*, 373 U.S. 647, 652, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963); cf. *J.I. Case Co. v. Borak*, 377 U.S. 426, 434, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 394, 395, 29 L.Ed.2d 619, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971); id., at 400, 91 S.Ct. 1999, 2006, 29 L.Ed.2d 619, (Harlan, J., concurring in judgment)."

422 U.S. 66 at 78, 95 S.Ct. at 2087, 45 L.Ed.2d 26 at 36.

Eliminating the fourth consideration of the *Cort* test as inapplicable to the consideration of whether a state statute infers a cause of action, since it arises from the basic principle of federalism which accords deference to the states in those areas customarily regulated by them and is founded on a recognition that Congress would not intend to create by implication a private cause of action which would constitute a new federal right in an area of the law traditionally regulated by the states, *Hurley v. Allied Chemical Corp.*, W.Va., 262 S.E.2d 757 (1980), a review of 19 *Del.C.* § 2912(a) under the principles enunciated by *Cort* reveals that no private cause of action was intended to arise from § 2912(a).

Looking to the first element of the *Cort* test, it is obvious that our plaintiffs are not members of a class "for whose especial benefit the statute was enacted." The language of the statute sets forth no specific

group of persons as the group to be protected. Rather, the statute by its plain language, was enacted to provide the Delaware Real Estate Commission with the power to suspend or revoke a real estate broker's license when necessary to prevent misconduct generally harmful to the public. Thus the statute seeks to protect the public, rather than any specific group.

Similarly, there is no indication of legislative intent, either explicit or implicit, to create a statutory remedy. An examination of 24 Del.C. § 2912(a)(1)–(9) reveals that the Legislature in setting forth the grounds upon which the Commission could suspend or revoke a broker's license, adopted no special standard nor delineated any specific actions. Rather, the Legislature empowered the Real Estate Commission to revoke or suspend a broker's license if the broker engages in activity which would render the broker liable in a suit for common law fraud. It would be ludicrous to assume the Legislature intended to create a statutory cause of action, where the statutory cause of action would require precisely the same type or method of proof as the common law action.

A review of the other provisions of Chapter 29 of Title 24 support the impression that Chapter 29 was solely intended to provide a method of regulating the licensing of real estate brokers. The greatest majority of provisions deal with the procedures provided for granting, suspending or revoking the mentioned licenses. Sections 2902, 2903, 2904 and 2905 establish the Real Estate Commission and delineate its powers. Sections 2906, 2907, 2908, 2909, 2910 and 2911 describe the qualifications to be met before a certificate is granted and what the effect of the license is. Sections 2912, 2913, 2914 and 2915 provide the grounds and procedures for the suspension or revocation of a certificate. Even Section 2921, which provides for the establishment of Real Estate Guaranty Fund to compensate "persons aggrieved by any action of a real estate broker or real estate salesman" of Delaware contemplates a common law suit for fraud before any payment from the Fund is made.

Title 24 of the Delaware Code, Section 2921, provides, in relevant part:

"§ 2921. Real Estate Guaranty Fund

(a) The Commission shall establish and maintain a Real Estate Guaranty Fund (hereinafter referred to as the 'Fund') from which; subject to this section, any person aggrieved by any action of a real estate broker or real estate salesman holding a certificate issued under this chapter, by reason of theft or forgery (as defined in Title 11) or by reason of any fraud, misrepresentation or deceit by or on the part of any such real estate broker or real estate salesman or any employee thereof who does not hold a certificate, may recover, on order of the Commission with right of appeal to the Superior Court, compensation in an amount not exceeding in the aggregate the sum of $10,000 in connection with any 1 transaction or claim, regardless of the number of persons aggrieved or parcels of real estate involved in such transaction or claim.

\* \* \* \* \* \*

(d) If the balance of the Fund should fall below the $50,000 level, the Commission shall, at the next certificate renewal date, assess each real estate broker and real estate salesman a pro rata fee in such amount that the Fund will be returned to the $50,000 level.

(e) No aggrieved person shall be entitled to recover compensation from the Fund unless his action against the real estate broker or real estate salesman is commenced within 1 year from the accrual of the cause of action.

(f) When an aggrieved person commences an action which may result in collection from the Fund, he or his attorney shall notify the Commission in writing, within 5 days of the commencement of the action. The written notification shall identify the parties to the action, the court in which the action is brought and the date the action was commenced, and shall state the relief sought in the action and shall state that the action may result in a claim against the Fund. A copy of the complaint, counterclaim or

cross-claim, if any, setting forth the allegations of the action, shall be enclosed with written notification.

Upon receiving notice of an action pursuant to subsection (f) of this section, the Commission shall have the right to enter an appearance, intervene in or defend the action and may appeal from any judgment entered against a real estate broker or real estate salesman holding a certificate issued under this chapter.

(g) If the aggrieved person obtains a final judgment against a real estate broker or real estate salesman holding a certificate issued under this chapter for loss or damage sustained by reason of theft or forgery (as defined in Title 11) or by reason of fraud, misrepresentation or deceit by or on the part of such real estate broker or real estate salesman or employee thereof who does not hold a certificate, such aggrieved person may file a verified claim with the Commission seeking an order directing payment from the Fund of the amount unpaid upon the judgment, subject to the limitations stated in subsection (a) of this section and this subsection. The Commission shall proceed upon such claim in a summary manner and upon the hearing thereof the aggrieved person shall be required to show:

(1) That he is not a spouse of the judgment debtor, or the personal representative of said spouse;

(2) That he has complied with all the requirements of this section;

(3) That he has obtained a final judgment as set out in this subsection, stating the amount thereof and the amount owing thereon at the date of the filing of his verified claim; and

(4) That he has fully pursued and exhausted all available remedies and taken all reasonable steps to collect the amount of the judgment, stating the total amount collected.

If the Commission is satisfied that the aggrieved person has satisfied all the requirements of this section and is entitled to recover compensation from the Fund, it shall enter an order requiring payment from the Fund of whatever sum it shall find to be payable upon the claim, subject to the limitations of subsection (a) of this section.

The Commission in its discretion may authorize payment of an amount from the Fund less than the claim made pursuant to this subsection.

(h) If the Commission pays from the Fund any amount in settlement of a claim or toward satisfaction of a judgment against a real estate broker or real estate salesman holding a certificate issued under this chapter, the certificate of such salesman shall be automatically revoked; and, in the discretion of the Commission, such broker or salesman shall be ineligible to receive a new certificate until he has repaid in full, plus interest at the rate of 5 percent per annum, the amount paid from the Fund on his account. A discharge in bankruptcy shall not relieve a person from the penalties and disabilities provided in this subsection."

As is obvious from the language of § 2921, the aggrieved person must file an action, and obtain a judgment against a broker for theft, forgery, fraud, misrepresentation or deceit before any monies may be released from the Fund to compensate the aggrieved person for his injuries. Thus, the provision contemplates not "an action for loss or damage sustained by reason of the violation of a provision of this chapter" or similar language which might imply a private remedy, but rather "a final judgment against a real estate broker ... for loss or damage sustained by reason of theft or forgery (as defined in Title 11) or by reason of fraud, misrepresentation or deceit by or on the part of such real estate broker ...". 24 Del.C. § 2921(g). Clearly, then, the machinery provided by Chapter 29 was intended solely to allow for regulation of the real estate brokers.

█ Finally, considering the language of the provisions of Title 24, Chapter 29, I conclude it would be inconsistent with the underlying purpose of the legislative

scheme of Chapter 29 to imply a statutory cause of action arising from 24 *Del.C.* § 2912(a). By its clear language, Chapter 29 was intended to provide regulatory powers to the Real Estate Commission in order to protect the public. The Legislature, through Chapter 29, sought to provide this protection by creating the licensing machinery which the Commission employs to regulate the conduct of the real estate brokers, and by creating a fund, the purpose of which is to insure compensation to those members of the public injured by the conduct of real estate brokers, if the brokers are unable to compensate them. To imply a statutory cause of action from the provisions of 24 *Del.C.* § 2912(a), contrary to the clear language of the statute, where such a cause of action would at best duplicate an existing common law remedy without enhancing the power of the agency created by Chapter 29 to protect the public, is clearly inconsistent with the purposes of the legislative scheme as embodied in Title 24, Chapter 29 of the *Delaware Code.*

In summary, I conclude that in light of the standards enunciated by *Cort v. Ash, supra,* defendant has demonstrated as a matter of law that plaintiffs cannot base a private cause of action upon the provisions of 24 *Del.C.* § 2912(a). I therefore grant defendant's motion for summary judgment as to plaintiffs' claim based upon 24 *Del.C.* § 2912(a). However, as stated before, defendant's motion for summary judgment as to plaintiffs' common law action for fraud is denied.

IT IS SO ORDERED.