James P. SULLIVAN, Jr., et al.,
Respondents,

v.

Richard L.E. OUIMET, et al.,
Appellants.

No. C9–85–775.

Court of Appeals of Minnesota.

Nov. 19, 1985.

Michael D. Quayle, Green, Merrigan, Johnson & Quayle, P.A., Minneapolis, for respondents.

John M. Mulligan, Mulligan & Bjornnes, Minneapolis, for appellants.

Considered and decided by POPOVICH, C.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

POPOVICH, Chief Judge.

This is an appeal by Richard L.E. Ouimet and Business Challenges, Inc. from an $11,-561.38 judgment entered against them for fraud and misrepresentation. Appellants contend the facts do not support (1) the trial court's determination that the loan transaction was fraudulent, (2) a personal judgment against Ouimet, and (3) an award of punitive damages and attorney's fees. We affirm.

## FACTS

Appellant Richard Ouimet is president and owner of appellant Business Challenges, Inc., operator of several "Croissants n' Cheese" sandwich stores in Minneapolis. Respondent James Sullivan answered Ouimet's newspaper ad for a baker in August 1983 and began work in September. The parties entered into an independent contractor agreement on October 1, 1983 which provided for Sullivan to perform services for the corporation, in return he would be permitted to become a shareholder. He was given the title of vice-president.

Sullivan agreed to lend Ouimet funds from a pension money purchase plan from a previous employer to pay off an IRS tax lien on Ouimet's business. Sullivan received the money in two checks. He gave Ouimet the first check, $4885, on November 3 and the second one, $3676.38, on November 14. The next day Ouimet gave Sullivan a note dated November 14, 1983 which provided that the corporation would repay Sullivan in installments over three years. Only interest payments were due the first year with the bulk of the principal payments concentrated in the third year. Ouimet fired Sullivan three days later on November 17.

Sullivan testified Ouimet learned at their initial meeting that Sullivan would receive the pension funds. He said they discussed the loan on several occasions including a meeting at Sullivan's house where Ouimet explained the situation to respondent Geraldine Sullivan, James' wife.

Sullivan testified Ouimet told him: (1) he would use the money to pay off the IRS tax lien; (2) he had approval for a bank loan to buy a new oven for the business; (3) he would retain Sullivan during the winter months when business is slow; (4) Sullivan would own at least 49 percent of the corporation's stock; (5) he would provide Sullivan with a Uniform Commercial Code (U.C.C.) filing to secure the loan; and (6) he would provide Sullivan with sales records and profit and loss statements on the business.

Ouimet disagrees. He claims he was not aware of the pension fund source prior to entering the employment agreement and Sullivan volunteered the loan. Ouimet testified he had good reason to fire Sullivan because Sullivan was an unwilling worker, unproductive, unpopular with employees, and insubordinate.

The trial court found that Ouimet fraudulently induced Sullivan to make the loan, and awarded respondents punitive damages, attorneys fees and a personal judgment against appellant Ouimet.

## ISSUES

1. Is the evidence sufficient to support the trial court's verdict that the loan transaction was fraudulent?

2. Did the trial court err in ordering a personal judgment against appellant?

3. Is the evidence sufficient to support the award of punitive damages?

## ANALYSIS

1. Appellants did not move for a new trial but appealed from the judgment. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01. On appeal from a judgment where there has not been a motion for a new trial, the only questions for review are whether the evidence sustains the findings of fact, conclusions of law, and the judgment. *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

When the trial court acts as the trier of fact, its findings on disputed questions are given the same weight as a jury verdict and will not be overturned solely because a reviewing court views the evidence differently. *Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723 (Minn.1985). "The findings must be manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* at 726.

The elements of fraud in Minnesota are:

1. There must be a representation;

2. That representation must be false;

3. It must have to do with a past or present fact;

4. That fact must be material;

5. It must be susceptible of knowledge;

6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;

7. The representer must intend to have the other person induced to act, or justified in acting upon it;

8. That person must be so induced to act or so justified in acting;

9. That person's action must be in reliance upon the representation;

10. That person must suffer damage;

11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re-Trac Manufacturing Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967).

The trial court determined from the evidence that Ouimet knew about Sullivan's pension plan assets and promised to make him a 25 percent owner of the business. It also found Ouimet represented to Sullivan that: (1) he would use money to pay off an IRS obligation; (2) he had tentative approval for a bank loan to buy a new oven; (3) he would not lay-off Sullivan during the winter; (4) he would give Sullivan an additional 24 percent of the company's stock; (5) he would provide Sullivan with a U.C.C. filing to secure the loan; and (6) he would provide the Sullivans with sales records and a profit and loss statement on the business. The trial court further determined that respondents relied upon these representations, appellants knew respondents would rely on them and appellants knew they were false. These findings satisfy all the essential elements of fraud.

In Minnesota, an appellate court reviewing the claim of insufficiency of evidence is required to interpret the evidence in the

light most favorable to the verdict and assume the jury disbelieved any testimony conflicting with the result reached. *State v. Parker*, 353 N.W.2d 122, 127 (Minn. 1984).

In view of this standard of review and the evidence, it is apparent the trial court accepted Sullivan's version of the facts; thus the finding is supported by the evidence as a whole. Appellants claim the employment agreement and subsequent loan agreement were independent of each other. However, it is unlikely a new employee (two months duration) would lend his family's only savings to a financially troubled employer absent some sort of interest in the business or agreement of continued employment.

The trial court concluded Ouimet defrauded the Sullivans of $8561.38 and owes that amount. The court's findings clearly sustain the conclusions of law and the judgment. Given this narrow standard of review, the trial court did not err when it found the loan transaction was fraudulent.

2. Appellant Ouimet contends the trial court erred in ordering a personal judgment against him. He argues there is no evidence to indicate it was Richard Ouimet rather than the corporation that engaged in the fraudulent conduct. The evidence shows all contracts were made in the name of Business Challenges, Inc.

The general rule is:

Where an agent, acting for a disclosed principal, enters into a contract with third persons for and on account of his principal and in his name, the contract is that of the principal and does not give rise to any contractual obligation running to the agent.

*Kost v. Peterson*, 292 Minn. 46, 49, 193 N.W.2d 291, 294 (1971).

The foregoing rule does not, of course, apply if the agent is guilty of tortious conduct in connection with false representations or deception which induces the contract, as in *Sawyer v. Tildahl*, 275 Minn. 457, 148 N.W.2d 131 (1967), where there was evidence that the agent knowingly assisted in fraudulent representations that induced the injured person to enter into the contract.

*Id.* at 50, 193 N.W.2d at 294. The trial court here specifically found that appellant's acts were fraudulent, willful and wanton and that appellant knew they were false at the time he made them.

Minnesota law holds agents liable for their own fraudulent representation. *Sawyer v. Tildahl*, 275 Minn. 457, 148 N.W.2d 131 (1967). Therefore, appellant is personally liable for his own fraudulent representation as an agent of appellant corporation Business Challenges, Inc. The trial court did not err in ordering a personal judgment against him and the facts support this judgment.

3. Appellants contend that the trial court erred in awarding respondents punitive damages. Minn.Stat. § 549.20, subd. 1 (1984) provides that punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of defendants show a willful indifference to the rights or safety of others. The trial court found that appellants' acts were willful and wanton and in disregard of Sullivan's rights. Given the trial court's findings and the narrow standard of review, we find the trial court did not err in awarding punitive damages.

### DECISION

There is sufficient evidence to support the trial court's finding of fraudulent representation, the award of attorney's fees, punitive damages, and a personal judgment.

Affirmed.