**EMPIRE STATE BANK, Appellant,**

v.

**Norman VARPNESS, Respondent.**

**No. C2-86-921.**

Court of Appeals of Minnesota.

Nov. 4, 1986.

Review Denied Dec. 12, 1986.

James R. Anderson, Marshall, for appellant.

Kevin Stroup, Nelson, Oyen, Torvik, Minge, Christopherson & Gilbertson, Clarkfield, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and HUSPENI, JJ.

## OPINION

PARKER, Judge.

Empire State Bank appeals the trial court's denial of its claim arising from a note executed by respondent Norman Varpness. The jury found, by special verdict, that the bank had induced Varpness to sign the note by fraudulent misrepresentation. Based on this finding, the trial court held that the note was unenforceable. We reverse and remand with instructions to enter judgment for the bank.

**FACTS**

Bernard Belling operated two farms in southern Minnesota: the Rosvold farm and the LeMon farm. Belling depended on financing from the Empire State Bank (bank) for the continued operation of his farms, and by 1983 his debt to the bank exceeded $300,000. In the fall of 1983, bank officials advised Belling that he stood to lose at least $60,000 if he continued to farm in 1984 and, therefore, that the bank would not finance his 1984 operation unless he first reduced his debt to the bank by $100,-000.

Belling enlisted the aid of his father-in-law, Norman Varpness, who executed a note to the bank for $100,000 in exchange for a $100,000 reduction in Belling's debt. Belling then gave Varpness his own note for $100,000 in consideration for Varpness' note to the bank.

The bank then continued to advance Belling nearly $50,000 in cash and mortgage payments on the Rosvold farm. The bank made no additional payments on the LeMon farm. After the 1984 farming season, Belling liquidated his farming operation.

Varpness defaulted on his $100,000 note after making two interest payments, and the bank filed suit to collect on the note.[1] Varpness defended on the ground of fraudulent misrepresentation. Belling and Varpness were told by bank officials that the bank would make no more land payments until Belling's account balance was reduced. Varpness testified that he took this to mean that the bank would continue to finance Belling's LeMon farm in exchange for Varpness' $100,000 note.

At the conclusion of the trial the issue of fraudulent misrepresentation was submitted to the jury, in spite of the bank's objection that there was no evidence to support Varpness' argument and that the note should be held enforceable as a matter of law. The jury was given a special verdict form which included three questions relevant to this appeal:

---

1. The bank also brought a claim to enforce a separate $45,000 guarantee which Varpness had

failed to honor. The jury found Varpness liable on that transaction, and he has not appealed.

1. Did Plaintiff Empire State Bank intentionally represent that it would make the LeMon farm payment only if Norman Varpness would sign the $100,000 note in order to induce him to sign a $100,000 note?

2. If your answer to question number 1 is yes, did the Defendant, Norman Varpness, rely on the representation of the Bank in signing the $100,000 note?

3. If your answer to questions 1 and 2 are yes, did the Bank breach its agreement to make the farm payment?

The jury answered "yes" to each of these three questions. The court accordingly entered an order for judgment, denying the bank's claim on the note. The bank then moved for an amended judgment, judgment notwithstanding the verdict, or a new trial. The trial court denied these motions in a short order and memorandum, stating that "based upon the jury's determination of fraudulent misrepresentation of Plaintiff, the $100,000 note which Plaintiff seeks to assert is unenforceable." Judgment was entered and the bank appeals.

## ISSUE

Was the evidence sufficient to support the finding that the bank induced Varpness to execute the $100,000 note by fraudulent misrepresentation?

## DISCUSSION

It is not clear whether the bank moved for a directed verdict at trial. The trial transcript does indicate, however, that the bank asked the court to rule on the special verdict questions as a matter of law, claiming that the evidence to support Varpness' claim of fraud was insufficient. Such a request is analogous to a motion for a directed verdict, and we will treat it as such.

We have previously held that a trial court "should direct a verdict in favor of a party in whose favor the evidence overwhelmingly preponderates, though there is some evidence in favor of the adverse party." *Nelson v. Henning*, 354 N.W.2d 35, 39 (Minn.Ct.App.1984) (quoting *Reiter v.*

*Porter*, 216 Minn. 479, 483–84, 13 N.W.2d 372, 375 (1944)). In this case there was overwhelming evidence in the bank's favor, and a directed verdict therefore should have been entered.

For purposes of this decision we need only address the first special verdict question: whether the bank fraudulently induced Varpness to sign the note by representing that it would continue to finance Belling's LeMon farm in exchange for the note.

In support of the jury's finding of fraud, Varpness cites this court only to his own statements from the transcript:

I think it was told to me that there would be no more land payments on the LeMon land because [the bank president] never thought too much of that.

[The bank president] said * * * 'there is going to be no more land payments until we get the account down.'

[The bank's loan officer] said 'there will be no more land payments until the account is taken down.'

However, these statements actually support the *bank's* argument. The first shows that Varpness was told unconditionally that there would be no more payments on the LeMon farm. He was not told there would be payments on the LeMon farm if he executed the note.

According to Varpness' other two statements, the bank employees merely said there would be no additional land payments until Belling reduced his debt. The employees did not specifically represent that the bank would make payments on the LeMon farm. Once Belling reduced his debt, the bank did make land payments of nearly $50,000 on his other farm. Assuming that an inference of a general promise to make land payments could be drawn from the foregoing statements, the promise was kept.

Belling's testimony also fails to support Varpness' argument:

Q: Now, is it not true, Mr. Belling, that first of all you testified that [the

bank president] stated something to the effect, correct me if I am wrong, but there is not going to be any more land payments unless these balances come down.

A: Land payments were one of the things that was not going to be any more, but that was one of them, yes.

Q: There wasn't going to be any money for anything else, in other words, there wasn't going to be any more advances period?

A: That's correct.

Q: And this would be the better context rather than single out a land payment, simply saying there wasn't going to be any more money period unless your debts came down?

A: That's correct. As far as I was concerned there were several things and as far as [Varpness] was concerned, all it was was the land payment, I guess. That was all that interested him.

This testimony merely indicates that the bank agreed to make land payments in general.

 We find no reasonable basis for Varpness' belief that the execution of his note would lead to the bank's continued financing of the LeMon farm. To prove fraud, the alleged victim must show either that the accused party intended to induce reliance on its false representation, or that such reliance was justified under the circumstances. *See Sawyer v. Tildahl*, 275 Minn. 457, 460–61, 148 N.W.2d 131, 133 (1967). In this case the general nature of the bank officials' statements negates any showing of fraudulent intent and leads to the conclusion that any reliance by Varpness was not justified. From the general statement that no land payments would be made unless the account were reduced, Varpness inferred a specific promise to make payments on a particular property; such unjustified reliance cannot support a claim of fraud.

Even though we are reluctant to set aside a jury's special verdict, such a dispo-sition is appropriate where, as here, the evidence is "so clear as to leave no room for differences among reasonable persons." *Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 76 (Minn.1981).

Because the bank made no fraudulent misrepresentation, Varpness is liable for the note's full value of $100,000 plus appropriate interest and costs, to be determined by the trial court. We reverse and remand with orders to enter judgment for the bank accordingly. In light of this holding, we need not discuss the other two special verdict questions nor reach the additional issues raised by appellant.

## DECISION

In the absence of any evidence to support a finding of fraudulent misrepresentation, Varpness' note is fully enforceable.

Reversed.