# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| 913 MARKET, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N16C-09-240 CLS |
| | ) | |
| INVESTUSA HOLDING | ) | |
| ENTERPRISES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: October 1, 2019
Date Decided: November 25, 2019

## MEMORANDUM OPINION

Decision after Bench Trial
**Verdict for Plaintiff.**

Charles J. Brown, III, Esquire, Gellert Scali Busenkell & Brown, LLC, Wilmington, Delaware, Attorney for Plaintiff.

Donald L. Gouge, Jr., Esquire, Donald L. Gouge, Jr., LLC, Wilmington, Delaware, Attorney for Defendant.

**SCOTT, J.**

1

## I. INTRODUCTION

This is the Court's decision following a one-day bench trial regarding a contractual dispute between Plaintiff 913 Market, LLC ("Plaintiff") and Defendant InvestUSA Holding Enterprises, LLC ("Defendant").

## II. FINDINGS OF FACT

### A. Timeline of Events

Sometime in June 2016, Defendant won an auction for the sale of a property located at 913 N. Market Street in Wilmington, Delaware ("Property"). On or about June 15, 2016, the parties executed a written contract for the sale of the Property: the Purchase and Sale Agreement ("Agreement"). Per the terms of the Agreement, Plaintiff agreed to sell the Property to Defendant for $1,233,750.00. The Agreement listed the closing date as July 15, 2016.

On July 13, 2016, counsel for Plaintiff sent a letter to Defendant via express mail and email.[1] In this letter, Plaintiff's counsel indicated that Plaintiff had complied with all of the covenants and obligations required of it by the Agreement. Plaintiff demanded that Defendant close on the contracted-for closing date, July 15.

On July 14, 2016, counsel for Defendant sent a letter to Plaintiff via email.[2] In this letter, Defendant's counsel informed Plaintiff that it found Plaintiff to be

---

[1] Pl.'s Ex. 3.
[2] Pl.'s Ex. 4.

uncooperative and alleged that Plaintiff had failed to provide it with vital information concerning the Property, including copies of all the leases, insurance information, and access to utilities. Defendant stated that it would not close on July 15—despite being ready, willing, and able to do so—and offered to close within 30 days.

On July 15, 2016, counsel for Plaintiff sent a letter to Defendant via express mail and email ("July 15[th] Letter").[3] In this letter, Plaintiff's counsel reiterated that Plaintiff had complied with all of its obligations under the Agreement. Plaintiff reminded Defendant that, prior to bidding on the Property at auction, Defendant had the opportunity to request "any additional information that it so desired." In this letter, Plaintiff also stated:

> Consequently, this letter constitutes [Plaintiff's] notice that [Defendant] has failed to comply with its closing obligation under the Purchase Agreement and demand for payment of the Earnest Money Deposit. [Plaintiff] will comply with the mediation requirements of the Purchase Agreement if necessary recognizing that the prevailing party in any such mediation (or arbitration or other proceeding) is entitled to recovery of its reasonable attorney's fees and costs.[4]

Defendant failed to close on the Property on July 15, 2016.

On July 20, 2016, counsel for Plaintiff sent a letter to Defendant via First Class mail and email ("July 20[th] Letter").[5] In this letter, Plaintiff's counsel advised Defendant that Plaintiff believed Defendant was unable to close on the Property and

---

[3] Pl.'s Ex. 5.
[4] Pl.'s Ex. 5.
[5] Pl.'s Ex. 6.

3

had forfeited its earnest money deposit. Plaintiff reiterated that the closing deadline had expired. Plaintiff's counsel also proposed three potential dates for mediation.

The parties did not mediate this dispute on any of the three dates that Plaintiff proposed to Defendant in the July 20th Letter.

Between July 20, 2016 and August 25, 2016, counsel for both parties exchanged emails regarding the sale of the Property.[6] In a number of these emails, Plaintiff's counsel discussed moving the dispute to mediation, as required by the Agreement.[7] In response, Defendant's counsel maintained that Defendant still wanted to move forward with the sale of the Property. On July 27, 2016, Defendant submitted to Plaintiff a summary of terms from Defendant's mortgage company that listed the closing date as August 15, 2016.[8] Defendant, however, failed to close on the Property on August 15, 2016. In an email dated August 5, 2016, Defendant's counsel advised Plaintiff's counsel that Defendant would be ready to close by the end of August. In an email dated August 25, 2016, Plaintiff's counsel explicitly informed Defendant that Plaintiff never agreed to extend the deadline for closing.[9] Defendant also failed to close on the Property on August 30, 2016, the last day of August 2016.

---

[6] Pl.'s Ex. 8; Pl.'s Ex. 9; Pl.'s Ex. 10; Def.'s Ex. 2.
[7] Pl.'s Ex. 1, ¶ 12.
[8] Pl.'s Ex. 7.
[9] Pl.'s Ex. 10.

4

On August 3, 2016, Plaintiff and a third-party buyer signed a purchase and sale agreement for the sale of the Property ("Third-Party Contract").[10] Plaintiff conveyed to Defendant its concern about losing this third-party buyer in the July 20th Letter.

## B. Relevant Provisions of the Agreement

In the Agreement, the earnest money deposit was listed as $61,687.50. The parties then signed an addendum to the Agreement and increased the earnest money deposit to $123,375.00.[11] Defendant paid the $123,375.00 in earnest money to the closing agent listed in the Agreement, First American Title Insurance Company.

Paragraph 8(A) of the Agreement outlines the remedies available to the non-defaulting party when one party fails to close on or before July 15, 2016.[12] Both parties agreed that if Defendant defaulted on the Agreement then Plaintiff would retain the earnest money deposit as liquidated damages. Paragraph 8(A) is written in bold-ink on the third page of the Agreement and is immediately followed by both parties' initials.

Paragraph 13(H) states that time is of the essence for the sale of the Property.[13] Under Paragraph 13(J), the prevailing party in any action arising out of the

---

[10] Def.'s Ex. 1.
[11] Pl.'s Ex. 2.
[12] Pl.'s Ex. 1, ¶ 8(A).
[13] Pl.'s Ex. 1, ¶ 13(H).

5

Agreement is entitled to reasonable attorneys' fees and costs.[14] Finally, Paragraph 13(L) provides that all notices or communications contemplated under the Agreement should be in writing and will be considered proper if: (i) delivered personally; (ii) mailed by registered or certified mail, return receipt requested; (iii) sent by nationally recognized overnight courier; (iv) delivered via facsimile transmission, provided that receipt of such is confirmed telephonically or by a statement generated by the machine; or (v) delivered via email, provided that receipt of such is confirmed telephonically or by an email response.[15]

## III. PARTIES' CONTENTIONS

Plaintiff alleges breach of contract against Defendant for failing to close on the sale of the Property by July 15, 2016.[16] Plaintiff asks this Court to enter judgment against Defendant in the amount of $123,375.00. Plaintiff also requests that the Court award Plaintiff the costs and fees which Plaintiff incurred pursuing this action. Finally, Plaintiff asks for a declaratory judgment in the instant case. Plaintiff asks this Court to decide whether Defendant breached the contract by failing to close, whether Plaintiff is entitled to the earnest money deposit as liquidated damages,

---

[14] Pl.'s Ex. 1, ¶ 13(J).
[15] Pl.'s Ex. 1, ¶ 13(L).
[16] Compl. ¶¶ 26–29.

whether Defendant may assert any rights in the Property, and whether Plaintiff may sell the property free and clear of Defendant's claims.

Defendant alleges breach of contract against Plaintiff for failing to properly notify Defendant that the contract was terminated and that it was cancelling escrow.[17] Defendant further alleges fraud and concealment against Plaintiff for failing to inform Defendant that Plaintiff had entered into another contract for the sale of the Property. Defendant asks the Court to award Defendant the $123,375.00 earnest money deposit, attorneys' fees, and costs.

## IV. DISCUSSION

### A. Breach of Contract

Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation; and 3) resulting damages.[18] According to Paragraph 3 of the Agreement, the transaction for the sale of the Property was to close on July 15, 2016.[19] Paragraph 3 obligates both parties to complete the terms of the Agreement by the closing date, July 15, 2016. Defendant failed to close on the Property by the closing date; thus, Defendant breached his

---

[17] Def.'s Answer to Compl., Affirmative Defense and Countercl. ¶¶ 42–57.
[18] *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005).
[19] Pl.'s Ex. 1, ¶ 3.

obligation under the Agreement. Plaintiff suffered damages as a result of Defendant's breach because Plaintiff had to find another buyer for the Property.

Paragraph 8(A) contains a liquidated damages clause that awards Defendant's earnest money deposit to the non-defaulting party. Paragraph 8(A) states:

> If closing does not occur on or before the Closing Date due to a breach of this Agreement by Buyer or Seller, then the non-defaulting party may cancel the Escrow by written notice to the defaulting party and Closing Agent. Upon such cancellation, the defaulting party shall pay all cancellation fees of Closing Agent and Title Insurance Company. If Seller is the defaulting party, Closing Agent shall return the Earnest Money Deposit to Buyer, and Buyer shall be entitled to pursue remedies at law or in equity. If Buyer is the defaulting party, then the following shall apply:
>
> **BUYER AND SELLER EXPRESSLY AGREE THAT IT WOULD BE EXTREMELY DIFFICULT TO DETERMINE SELLER'S ACTUAL DAMAGES AS A RESULT OF SUCH DEFAULT BY THE BUYER, THEREFORE THE PARTIES AGREE THAT SELLER SHALL RETAIN (AND CLOSING AGENT IS DIRECTED TO DELIVER TO SELLER) AS LIQUIDATED DAMAGES AND NOT AS A PENALTY AND AS A REASONABLE PRE-ESTIMATE OF SELLER'S ACTUAL DAMAGES FOR BREACH OF THIS AGREEMENT AN AMOUNT EQUAL TO THE EARNEST MONEY DEPOSIT AS SELLER'S SOLE AND EXCLUSIVE REMEDY. DESPITE THE FOREGOING, IF APPLICABLE LAW LIMITS THE AMOUNT OF THE EARNEST MONEY DEPOSIT THAT MAY BE RETAINED BY SELLER, CLOSING AGENT SHALL ONLY DELIVER TO SELLER THE AMOUNT PERMITTED BY LAW, AND ANY EXCESS SHALL BE PROMPTLY RETURNED TO BUYER.[20]**

---

[20] Pl.'s Ex. 1, ¶ 8(A).

8

This Court interprets clear and unambiguous terms, like those contained in Paragraph 8(A), according to their ordinary meaning.[21] Under Paragraph 8(A), if Defendant (the Buyer) is the defaulting party, then Plaintiff (the Seller) is entitled to retain the earnest money deposit as its "sole and exclusive" remedy.

As a result of Defendant's breach, Plaintiff is entitled to retain Defendant's earnest money deposit of $123,375.00.

**B.    Notice**

Defendant alleges that Plaintiff failed to advise Defendant properly by written notice that Plaintiff was cancelling the escrow. As stated in Paragraph 8(A), the non-defaulting party may cancel the escrow by written notice to the defaulting party and the closing agent. Per the Paragraph 13(L), all notices "contemplated under this Agreement" are to be communicated in one of five specific ways in order to "be deemed given and received upon receipt."[22]

In the July 15th Letter, Plaintiff notified Defendant that Defendant breached the Agreement and demanded payment of the earnest money deposit.[23] Plaintiff sent the July 15th Letter via express mail and via email. As laid out in Paragraph 13(L) of the Agreement, a communication is properly sent if it is sent via registered or

---

[21] *GMG Capital Investments, LLC v. Athenian Venture Partners I*, 36 A.3d 776, 780 (Del. 2012).
[22] Pl.'s Ex. 1, ¶ 13(L).
[23] Pl.'s Ex. 5.

certified mail, return receipt requested or via email and confirmed by a telephone or email response. In the July 20th Letter, Plaintiff's counsel used the words "as we discussed yesterday."[24] This language indicates that the July 15th Letter was confirmed by a telephone conversation between counsel for Plaintiff and counsel for Defendant.

Assuming *arguendo* that the July 15th Letter was not sufficient to cancel the escrow, the July 20th Letter sufficiently cancels the escrow. The July 20th Letter reiterated that Defendant failed to close on the closing date and that Defendant's earnest money deposit was forfeited. In the July 20th Letter, Plaintiff also indicated its desire to move forward with mediation quickly.[25] Plaintiff sent the July 20th Letter via First Class mail and via email. The July 20th Letter appears to have been attached to an email from Plaintiff's counsel to Defendant's counsel on July 20, 2016.[26] Counsel for Defendant responded to this email on July 22, 2016 and provided the date that Defendant would be available for mediation.[27] It is not conjecture to conclude that the July 20th Letter was attached to the July 20th email to Defendant from Plaintiff's counsel. The July 20th Letter proposed three dates for

---

[24] Pl.'s Ex. 6.

[25] Per Paragraph 12, disputes arising under the Agreement were to be first submitted to mediation before the aggrieved party initiated court action. Pl.'s Ex. 1. Thus, Plaintiff's discussion of mediation provides Defendant with another clue that Defendant was in breach of the Agreement.

[26] Pl.'s Ex. 8.

[27] Pl.'s Ex. 8.

10

mediation; counsel for Defendant responded that he and his client would be available for mediation on the last proposed date. Further, the email to which the July 20th Letter was attached did not contain any information about mediation; counsel for Defendant could only have learned of the proposed mediation dates from the July 20th Letter. Thus, Defendant's counsel's response on July 22nd to the July 20th email is a sufficient response to confirm Defendant's receipt of the July 20th Letter. Therefore, Plaintiff properly notified Defendant of the default.

Plaintiff properly cancelled the escrow.

## C.    Fraud and Concealment

In its counterclaim, Defendant alleges fraud and concealment against Plaintiff. To state a claim for fraud, Defendant must show: 1) a false representation, usually one of fact, made by Plaintiff; 2) Plaintiff's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) Plaintiff intended to induce Defendant to act or refrain from acting; 4) Defendant's action or inaction taken in justifiable reliance upon the representation; and 5) damage to Defendant as a result of such reliance.[28] An act of fraud can be either an overt misrepresentation, a deliberate concealment of material facts, or a silence in the face of a duty to speak.[29]

---

[28] *Nicolet Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987); *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del. 1983).
[29] *Stephenson*, 462 A.2d at 1074.

11

Defendant's counterclaim can be properly categorized as alleging that Plaintiff deliberately concealed material facts or that Plaintiff remained silent in the face of a duty to speak. To state a claim of fraud by active concealment, Defendant must show that Plaintiff "took some affirmative action in nature designed or intended to prevent, and which does prevent, the discovery of facts giving rise to the fraud claim, some artifice to prevent knowledge of the facts or some representation intended to exclude suspicion and prevent inquiry."[30] A claim of fraudulent concealment requires that Defendant allege i) Plaintiff intentionally deceived Defendant and ii) Defendant relied upon this deception to its detriment.[31]

Defendant has failed to prove the elements of its counterclaim for fraud and concealment. Defendant alleges that Plaintiff failed to inform it of the Third-Party Contract. Plaintiff entered into the Third-Party Contract on August 3, 2016—twenty days after Defendant breached the Agreement. Defendant has no legal right to complain of Plaintiff's post-breach conduct when Defendant is the breaching party

---

[30] *Lock v. Schreppler*, 426 A.2d 856, 860 (Del. Super. 1981) (citing *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254, 256 (Del. Super. 1969)), *partially superseded on other grounds by statute*, 24 *Del. C.* § 2928 (1987), *as recognized in Eastern Commercial Realty Corp. v. Fusco*, 654 A.2d 833, 837 (Del. 1995).
[31] *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121, 150 (Del. Ch. 2004).

and when the Agreement specifically releases both parties from all "obligations and liabilities" after a breach occurs.[32]

Furthermore, Defendant has not identified which fact, specifically, Plaintiff misrepresented. From its counterclaim, Defendant alleges Plaintiff failed to advise Defendant that it entered into the Third-Party Contract. However, Defendant was on notice that Plaintiff sought another buyer for the Property after Defendant's breach. In the July 20th Letter, Plaintiff's attorney stated, "[m]y client believes that it has *a back-up buyer* and is concerned that delay will result in a loss of that purchaser as well" and "I would like to target July 27 as the mediation date due to the concern over the potential loss of *the back-up buyer*."[33]

Plaintiff and Defendant communicated periodically via email between July 20, 2016 and August 25, 2016. At no point during these communications did Plaintiff represent to Defendant that the Agreement was anything more than terminated. On August 5th, Defendant offered to pay Plaintiff $5,000 for—in Defendant's words—"an extension."[34] In response, counsel for Plaintiff informed Defendant that Plaintiff's position was "that the deposit has been forfeited," but that

---

[32] *See* Pl.'s Ex. 1, ¶ 8(C) ("Upon cancellation of Escrow pursuant to this Section, Buyer, Seller, and each of their respective agents shall be released from all obligations and liabilities under this Agreement.").
[33] Pl.'s Ex. 6 (emphasis added).
[34] Pl.'s Ex. 9, Ex. 10.

he (Plaintiff's counsel) would convey Defendant's offer to his client.[35] Plaintiff's counsel's response to Defendant's August 5th offer is nothing more than an attorney stating that he will present a settlement offer to his client. Even if Plaintiff's counsel's language could be construed as anything more, Plaintiff's counsel's email from August 25, 2016 stops that speculation-train in its tracks. In the August 25th email, counsel for Plaintiff clearly states that his client believes that the parties are "out of contract," that Defendant breached the contract, and that Plaintiff is entitled to the earnest money deposit.[36] Plaintiff's position remained consistent throughout these communications.

The Court finds that Plaintiff never falsely represented a material fact to Defendant. The Court also finds that, even if Plaintiff falsely represented a material fact, Defendant has failed to prove the remaining elements of his claim for fraud. Defendant failed to show: 1) that Plaintiff knew or believed that the representation was false or was made with reckless indifference to the truth; 2) that Plaintiff intended to induce Defendant to act or refrain from acting; 3) the action Defendant took or did not take in justifiable reliance upon Plaintiff's representation; and 4) the damage Defendant suffered as a result of such reliance.

Defendant has failed to prove his claim for fraud and concealment.

---

[35] Pl.'s Ex. 10 (email from Charles J. Brown III to Gary Boyd on August 5, 2016 at 4:49 pm).
[36] Pl.'s Ex. 10.

14

## D. Attorneys' Fees

The Agreement entitles the prevailing party in a litigation to obtain reasonable attorneys' fees and costs from the non-prevailing party.[37] Under the Agreement, "prevailing party" is defined as "the party who prevails as to a substantial part of the litigation or claim."[38] Plaintiff has prevailed on its claims, and Defendant has not prevailed on its claim. Therefore, Plaintiff is the prevailing party; as such, Plaintiff is entitled to reasonable attorneys' fees and costs.

The Court orders both parties to submit to the Court evidence of Plaintiff's "reasonable" attorneys' fees. The evidence presently before the Court[39] includes work that counsel for Plaintiff did on Plaintiff's behalf in a separate litigation, *913 Market, LLC v. Bathla*. The parties' submissions should omit work done for the *Bathla* matter.

## V. CONCLUSION

For the reasons set forth above, Defendant breached the Agreement by failing to go to closing on July 15, 2016. The Court issues a verdict in Plaintiff's favor. As the prevailing party in this litigation, Plaintiff is entitled to reasonable attorneys' fees and costs. Therefore, it is hereby **ORDERED**:

---

[37] Pl.'s Ex. 1, ¶ 13(J).
[38] Pl.'s Ex. 1, ¶ 13(J).
[39] Pl.'s Ex. 12.

15

1.  Defendant must give Plaintiff the $123,375.00 earnest money deposit.

2.  Defendant and Plaintiff shall both submit to the Court their proposed amounts for Plaintiff's "reasonable" attorneys' fees and costs by January 7, 2020.

_____
**The Honorable Calvin L. Scott, Jr.**